UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC CREDIT UNION, | : | Case No. 1:09-cv-143 |
| Plaintiff, | : | |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| NATIONAL FIRE INSURANCE OF HARTFORD, | : | **ORDER** |
| Defendant. | : | |

This case is currently before the Court on Defendant's motion for bifurcation and protective order (Doc. 13) and the parties' responsive memoranda (Docs. 16, 22). The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 7).

## I.  FACTUAL BACKGROUND

Plaintiff seeks to recover insurance proceeds for a fire loss that occurred to a Great Steak and Potato franchise restaurant located at 154 Rombach Avenue, Wilmington, Ohio, on August 5, 2007. The Great Steak restaurant was insured under a commercial fire insurance policy issued by National Fire ("the Policy") to Leadership Group of Ohio, LLC ("the insured"). Plaintiff provided financing to the insured for the build out of the Great Steak restaurant, and its interest was secured by UCC financing statements. Defendant claims that the insured had Plaintiff named on the Policy as a simple "loss payee."

Defendant allegedly made several payments to Plaintiff toward indemnification of the loss, including payments as late as February 2008, six months after the fire. However, after an investigation, the fire was determined to have been incendiary in cause (intentionally set). Accordingly, Defendant denied payment of the insured's claim on grounds of arson, fraud, and related Policy defenses, and now argues that arson by the insured voids the Policy as to the insured and all loss payees. *See Wycoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1493 (6th Cir. 1991).

Plaintiff, however, claims that it is entitled to payment of the fire loss under the Policy. Additionally, Plaintiff has asserted extra-contractual claims for bad faith and punitive damages, in part because Defendant allegedly failed to complete its investigation promptly and disposed of damaged property without advising Plaintiff.

Defendant claims that resolution of the lack of standing and contract/coverage issues should be decided before litigating Plaintiff's extra-contractual claims for bad faith and punitive damages so as to avoid unnecessary and protracted litigation. As further proof that bifurcation and a stay of discovery are necessary, Defendant claims that Plaintiff seeks discovery of privileged and protected information and materials in connection with its extra-contractual claims. Defendant requests that the Court bifurcate Plaintiff's contract claim from all other claims and issue a protective order staying discovery relating to Plaintiff's extra-contractual claims for bad faith and punitive damages, pending resolution of Plaintiff's contractual claims under the Policy.

Specifically, Plaintiff has propounded discovery requests seeking various information and materials from Defendant's investigation and claims files concerning the fire and the subsequent insurance claim. For example, Plaintiff propounded the following Interrogatory:

> 11. For each claim identified in your response to Interrogatory number 4 above, state with particularity the identities, roles and activities of any other person or entity other than an employee of National Fire, *including* but not limited to vendors, contractors, *attorneys, paralegals, clerks or other personnel of any law firm or other entity*, with respect to evaluating, managing, handling, processing and/or investigating of any claim under the Policy. This response shall include, but shall not be limited to, the date of each activity, the time performed in completing the activity, and what was performed by each person with respect to each activity at each time.

(Emphasis added). Plaintiff also included "attorneys" in its definition of "National Fire" with respect to all of its written discovery requests and requested a corporate deposition from Defendant pursuant to Fed. R. Civ. P. 30(b)(6), seeking testimony on a broad range of topics that Defendant claims would pry into its protected attorney client and/or work product areas if not circumscribed by the Court. (*See* Doc. 13, Ex. 1).

Defendant claims that it has produced in excess of 5,000 pages of documents, including the entire claims file and underwriting file, but has objected to those requests that seek information and/or materials otherwise protected by the attorney client privilege and/or attorney work product doctrine. (Doc. 22 at 6). Defendant has also withheld documents related to general claims handling procedures and reserve amounts. (*Id*.)

-3-

Plaintiff in turn represents that it does not seek discovery of attorney-client communications or attorney work product materials. (Doc. 16 at 7).

## II. ANALYSIS

Although not routine, a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party. *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988).[1] However, according to leading commentators, "[f]ederal courts have long adhered to the rule that bifurcation should be ordered <u>only in exceptional cases</u> because the piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." Wright & Miller, *Federal Practice and Procedure* § 2388, at 474 (2nd ed. 2006) (emphasis supplied). Although courts are vested with virtually unlimited freedom to try the issues in the manner that trial convenience requires, *see Saxio v. Titan-C-Mtg, Inc*., 86 F.3d 553, 556 (6th Cir. 1996), the party moving for bifurcation bears the burden of demonstrating that concerns of judicial economy and prejudice weigh in favor of granting the motion. Wright & Miller, *Federal Practice & Procedure* § 2388 (2nd ed. 2006) (citing *Ferro Corp. v. Cont'l Cas. Co.*, No. 1:06cv1955, 2008 U.S. Dist. LEXIS 108010, at *10 (N.D. Ohio Jan. 7, 2008)).

---

[1] Fed. R. Civ. P. 42(b) permits separate trials of any claim or issue and authorizes a court to "bifurcate a trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." In addition, trial courts have the inherent power and broad discretion to stay discovery until preliminary questions are determined. *Gettings v. Bldg. Laborers Local*, 349 F.3d 300, 304 (6th Cir. 2003). Although a federal court sitting in diversity applies the law of the forum state, *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), the conduct of discovery and bifurcation are matters of federal procedural law. *Smith*, 403 F.3d at 407.

A decision on bifurcation should be grounded in the facts and circumstances of each case. *Saxio*, 86 F.3d at 556. In deciding whether to bifurcate a case, the Court should consider: (1) whether bifurcation would be conducive to expedition of litigation and to efficient judicial administration; (2) whether bifurcation would prejudice the parties; and (3) whether the issues sought to be tried separately are significantly different. *Idzojtic v. Pennsylvania R.R. Co.*, 456 F.3d 1228 (3rd Cir. 1972).

There is no absolute rule that a coverage claim should always be bifurcated from a bad faith claim. *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2008 U.S. Dist. LEXIS 91496, at *8 (S.D. Ohio Nov. 3, 2008) (denying motion to bifurcate where plaintiff failed to demonstrate that it would be unfairly prejudiced by producing documents and proceeding with all claims at once, including bad faith); *see also Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 361-62 (8th Cir. 2000) (affirming denial of motion to bifurcate bad faith claim because insurer "has not shown that [the insured's] access to its claim files prejudiced its case"); *Light v. Allstate Ins. Co.*, 182 F.R.D. 210, 213 (S.D. W.Va. 1998) (refusing to bifurcate bad faith claim from coverage claim); *Nathanson v. Aetna Cas. & Sur. Co.*, No. 1-cv-3377, 2001 U.S. Dist. LEXIS 18248, at *1 (E.D. Pa. Nov. 7, 2001) (denying insurer's motion to bifurcate bad faith claim from contract claim).

Defendant claims that this Court should grant the motion for bifurcation and stay of discovery for three reasons: (1) whether Plaintiff is a simple loss payee and therefore

not owed a duty of good faith is a threshold legal issue that would preclude Plaintiff's extra-contractual claims; (2) resolution of Plaintiff's breach of contract claim in Defendant's favor will preclude all of the remaining extra-contractual claims as a matter of law; and (3) the discovery Plaintiff seeks would require production of information that is privileged from disclosure by the attorney client privilege and/or the attorney work product doctrine, the disclosure of which would prejudice Defendant and inhibit its ability to defend the underlying contract claim.

### A. Bifurcation

#### 1. Intertwined claims

Plaintiff argues that this case involves issues of fact that are deeply interwoven between both the coverage and bad faith claims, while Defendant maintains that the claims are distinct.

In cases where the coverage and bad faith claims are so interrelated that discovery relevant to the bad faith claim is also relevant to other claims, this Court has declined bifurcation. *See, e.g., Hauck Holdings v. Target Corp.*, No. C-1-08-682, 2009 U.S. Dist. LEXIS 47417, at *6 (S.D. Ohio May 26, 2009) (Weber J.) (denying bifurcation of the bad faith and coverage issues where both issues arise out of the same set of facts and are closely intertwined); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2008 U.S. Dist. LEXIS 91496, at *11 (S.D. Ohio Nov. 2, 2008) (declining to bifurcate where the claims involved "similar factual issues and appear to be intertwined"); *Hadi v. State Farm Mut.*

*Auto. Ins. Co.*, No. 2:07-cv-60, U.S. Dist. LEXIS 56708, at *5 (S.D. Ohio Aug. 3, 2007) (denying motion to bifurcate where the factual allegations underlying plaintiff's bad faith claim also form the basis for his other claims and the evidence would be relevant to all of the claims).

Defendant argues that discovery on the bad faith and contractual claims are distinguishable. Specifically, Defendant maintains that the contractual claim involves whether the denial of an insurance claim was correct, whereas the bad faith claim involves whether the insurance company was arbitrary or capricious. (Doc. 22 at 8). While the Court does not disagree that there is a distinction between the claims, the factual allegations underlying Plaintiff's bad faith claim (improper investigation of the fire) also form the basis of the contractual claim (if the fire was improperly investigated, coverage may also have been improperly denied). Moreover, the Court disagrees that "[t]he correctness of National Fire's claim denial does not require discovery of its procedures, practices, manuals or other matters pertaining to the way National Fire processes claims" because "the way National Fire processes claims" may directly impact the "correctness" of the claim denial. (Doc. 22 at 8).

Therefore, the Court finds that the claims are so interrelated that bifurcation at this stage of the litigation is inappropriate.

### 2. Coverage as a threshold issue

Additionally, Defendant argues that standing is a threshold issue because Plaintiff

must be owed a duty before it can prevail on a bad faith tort claim, and Defendant does not owe a duty of good faith to a simple loss payee. That is, Defendant argues that absent a duty of good faith, there can be no bad faith claim. *See Scotts Co. v. Liberty Mut. Ins. Co.*, No. 2:06-cv-899, 2007 U.S. Dist. LEXIS 65478, at *4 (S.D. Ohio Sept. 5, 2007) ("there can be no independent bad faith claim until plaintiff establishes the existence of the contractual relationship which gives rise to the insurer's duty to act in good faith in the first place.")

However, Plaintiff argues in turn that lack of coverage does not bar a bad faith claim. In *Poneris v. Pennsylvania Life Ins. Co.*, No. 1:06-cv-254, 2007 U.S. Dist. LEXIS 80685, at *7 (S.D. Ohio Oct. 18, 2007) (Dlott, J.), this Court refused to bifurcate coverage and bad faith claims, noting that bad faith failure to investigate properly exists independent of a contractual obligation for coverage. Therefore, contrary to Defendant's assertion, resolution of the breach of contract claim will not necessarily preclude all remaining claims as a matter of law. *See Klein v. State Farm Fire & Cas. Co.*, 250 Fed. Appx. 150, 156-57 (6th Cir. 2007) (recognizing that a bad faith claim against an insurer was "independent of the contract of insurance").

Defendant maintains that the cases Plaintiff cites to support its argument involve whether an insurance company can breach its duty of good faith when there is no coverage for the underlying claim, not whether the insurance company owes the plaintiff a duty of good faith in the first place. (Doc. 22 at 11). While the Court agrees that the

facts in *Klein* are distinguishable from the instant case, the undersigned is not convinced that Defendant does not owe a loss payee a duty to investigate properly the facts and circumstances surrounding a fire. *See, e.g., AmeriTrust Co. Natl. Ass'n. v. W. Am. Ins. Co.*, 525 N.E.2d 491, 495 (Cuyahoga Cty. 1987) (establishing first that an insurer has the duty to act in good faith in handling and payment of the claims of its insured – and holding that this statement of law applied to a mortgagee, rather than an insured, where the standard mortgage clause created an independent contract between the bank and the insurer) (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1320 (Ohio 1983)).

Accordingly, Defendant has not evidenced definitively that coverage is a threshold issue. Defendant has the burden to demonstrate that bifurcation is necessary, and it has failed to meet this burden at this stage of the litigation.

**B.   Stay of Discovery**

Defendant also requests that the Court issue a protective order staying discovery pertaining to Plaintiff's bad faith and extra-contractual claims. Trial courts have broad discretion and inherent power to stay discovery pending the resolution of preliminary questions which may be dispositive of the entire case. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). The Court has the power to impose such a stay and to specify its terms and conditions, and to otherwise limit discovery, pursuant to Fed. R. Civ. P. 26(c)(2) and (4).

Defendant argues that it will be prejudiced if discovery regarding the bad faith

allegations proceeds before the coverage claim is resolved. For support, Defendant cites two leading Ohio state court opinions: *Boone v. Canliner Ins. Co.*, 91 Ohio St. 3d 209 (2001); and *Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258 (2003). However, the Ohio courts in *Boone* and *Garg* did not conclude that defendants in bad faith cases will automatically suffer prejudice or that a stay of discovery on a bad faith claim is always warranted. As a United States District Court explained in evaluating *Boone* and *Garg*, "[t]he Ohio courts did not conclude that defendants in bad faith cases will automatically suffer prejudice or that a stay of discovery on the bad faith issues is always warranted." *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, No. 1:03cv1322, 2004 U.S. Dist. LEXIS 28795, at *12 (N.D. Ohio Feb. 9, 2004). In fact, the federal court in *Bondex* denied the motion to stay the bad faith claim because defendants did not show that discovery on the bad faith claim would inhibit defendants' ability to defend against the contract claim. Likewise, in the instant case, Defendant has not yet shown, beyond mere assertions, how the information requested by Plaintiff would impact Defendant's ability to defend the coverage claim.

Moreover, Defendant's statement that it has produced over 5,000 documents, including the claims and underwriting files, (*see* Doc. 22 at 6), coupled with Plaintiff's statement that it does not seek attorney-client privilege or work product documents, (*see* Doc. 16 at 7), leads the Court to believe that there is no present need to stay discovery.

If, however, Plaintiff seeks documents that Defendant believes are protected by privilege, Defendant may certainly challenge Plaintiff's requests pursuant to the Federal Rules or S.D. Ohio Civ. R. 37.1 to prevent prejudice. *See also Gaffney v. Fed. Ins. Co.*, No. 5:08-cv-76, 2008 U.S. Dist. LEXIS 64450, at *8 (N.D. Ohio Aug. 21, 2008) (a motion for bifurcation was premature where there was yet to be discovery or motion practice and many of the facts and circumstances that were relevant to the balancing of interests required of the court in exercising its discretion to bifurcate were unknown).

Additionally, delaying discovery and further extending this litigation, on the mere possibility that the resolution of the coverage issues may preclude Plaintiff's bad faith claim, does not operate to conserve the resources of the parties or this Court. *Bondex Int'l, Inc.*, 2004 U.S. Dist. LEXIS 28795, at *15-16. Instead, the Court finds that this case is potentially sufficiently complex that bifurcating these claims and delaying discovery until after the conclusion of the coverage claim could well result in "unnecessary duplication, delay, and expense and does not serve the interest of judicial economy." *Id*. at 16. *See also Maxey v. State Farm Fire & Cas. Co.*, 569 F.Supp. 2d 720, 723 (S.D. Ohio 2008) (Spiegel, J.) (denying motion to bifurcate, holding that the potential prejudice to the plaintiff as well as concerns regarding judicial economy outweighed potential prejudice to the defendants).

Therefore, having fully considered this matter, the Court does not find that a stay of discovery is necessary.

## III. CONCLUSION

Accordingly, for the reasons stated above, the Court **DENIES** Defendant's motion for bifurcation and protective order. (Doc. 13).

**IT IS SO ORDERED**.

Date:   September 30, 2009  			s/ Timothy S. Black  
　　　　　　　　　　　　　　　　　　　Timothy S. Black  
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge